UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERTO ZAMUDIO, individually, and
on behalf of all others similarly situated,

    Plaintiff,

v.

HSBC North America Holdings Inc.
and HSBC Finance Corporation doing
business as Beneficial/HFC

    Defendants.

CASE NO.: 07 C 4315
Judge John W. Darrah

CLASS ACTION
JURY DEMANDED

# FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Roberto Zamudio, by and through undersigned counsel, and in support of his claim for relief against Defendants, states the following:

## NATURE OF THE CASE

1. This is a class action seeking redress for the racially discriminatory conduct of Defendant HSBC North America Holdings Inc. and its wholly-owned subsidiary, HSBC Finance Corporation, doing business as Beneficial/HFC. These entities, hereinafter referred to interchangeably and collectively as "HSBC," discriminate against minority borrowers through use of automated underwriting and credit scoring systems that have a disparate, discriminatory impact on minority applicants for residential home mortgage loans. In particular, the automated underwriting and credit scoring systems used by HSBC rely upon credit scores and other credit information to determine whether to grant minorities residential mortgages and to determine the specific terms and conditions of the residential mortgages HSBC will grant to minorities. HSBC's specific policies and procedures regarding the use of credit scores and credit

information in the underwriting of residential home loans deny minority loan applicants loans more frequently than Caucasian applicants and result in minority borrowers receiving loans with less favorable terms and conditions than Caucasian borrowers in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 -3619, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 - 1691f. Roberto Zamudio was harmed when Defendants denied him a home loan, which occurred as a result of Defendants' discriminatory practices.

2. In the context of this case, the term "underwriting" refers to the decision-making policies and criteria HSBC used in deciding whether to grant an applicant a residential mortgage loan and in setting the terms and conditions of the loans they decide to grant.

3. As used in this Complaint, "minority" or "minorities" shall refer to all non-Caucasians and other minority racial groups protected under 42 U.S.C. §§ 1981, 1982, and 3604, and 15 U.S.C. § 1691. In addition, "residential mortgage loan" means a loan made for the purpose of purchasing, constructing, improving, repairing, or maintaining a dwelling, or a loan secured by residential real estate.

4. This action is brought by Plaintiff as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all minorities throughout the nation (hereinafter collectively referred to as the "Class" or "Class Members") who have applied for or have entered into residential mortgage loan contracts financed by HSBC based upon the common course of conduct described herein and who were harmed thereby.

5. Plaintiff seeks damages, including punitive damages, injunctive, declaratory and equitable relief, and other remedies for Defendants' racially discriminatory conduct.

## JURISDICTION AND VENUE

6  This action is brought pursuant to the provisions of the Fair Housing Act, 42 U.S.C. §3601 et seq. (the "FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. (the "ECOA"). Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that one or more of the Defendants resides or does business in this district and/or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

### Plaintiff Roberto Zamudio

8.  Plaintiff, Roberto Zamudio (hereinafter "Mr. Zamudio") is currently a resident of El Paso, Texas, but at all times relevant to this complaint, resided at 621 E. Paloma Blanca Drive, Chaparral, NM, 88081.

### Defendant HSBC North America Holdings Incorporated

9  Defendant HSBC North America Holdings Inc. is one of the top ten financial services organizations in the United States with assets totaling more than $300 billion. HSBC North America is the holding company for all of HSBC's U.S. and Canadian businesses, including the former Household International Inc. businesses. Financial products and services are offered under the HSBC, HFC, and Beneficial brands. HSBC North America Holdings is headquartered in Prospect Heights, Illinois. Upon information and belief, HSBC North America Holdings directs, participates in, and/or influences the setting and establishing of credit related underwriting guidelines used by HSBC Finance Corporation, doing business as Beneficial/HFC.

### Defendant HSBC Finance Corporation

10.  HSBC Finance Corporation, formerly known as Household International Incorporated, is wholly owned by HSBC North America Holdings and has a principal place of

3

business in Prospect Heights, Illinois. HSBC Finance Corporation provides middle-market consumer loans, including real estate secured loans. HSBC Finance Corporation's consumer lending business operates in the United States under the HFC and Beneficial names and is the nation's second largest consumer finance company, with more than 1,300 branches in 46 states. HSBC Finance Corporation, doing business as HFC and Beneficial, provides a variety of real estate secured and unsecured loans to primarily non-prime customers.

11. HSBC Finance Corporation's consumer lending business is marketed under both the HFC and Beneficial brand names. In addition, HSBC Finance Corporation uses "centralized underwriting, collection and processing functions" and that the company's "underwriting, loan administration and collection functions are supported by highly automated systems and processing facilities."

12. For purposes of the claims and conduct alleged herein, and upon information and belief, HSBC North America Holdings and HSBC Finance Corporation doing business as Beneficial/HFC, constituted an integrated enterprise, with common or overlapping management, common ownership, interest, or financial control, and a functional interrelation of operations with respect to the establishment of credit related underwriting guidelines.

13. As financing companies, HSBC North America Holdings and HSBC Finance Corporation both have a non delegable duty not to discriminate on the basis of race in violation of the FHA and the ECOA, which cannot be avoided by delegating aspects of the financial transaction to other parties.

**DEFENDANTS' DISCRIMINATORY, DECEPTIVE AND OTHER WRONGFUL ACTS**

14. HSBC has developed underwriting policies for residential home loans based upon automated underwriting and credit scoring systems that have a disparate impact on minority home loan applicants. In particular, Defendants' automated underwriting and credit scoring

4

systems evaluate and rely upon specific credit information and credit attributes which unfairly discriminate against minorities. While, as a general matter, the use and evaluation of credit information and credit attributes can be useful and valid in financial underwriting, the specific credit related information and credit variables Defendant uses in its automated underwriting and credit scoring systems are discriminatory. Defendants use their discriminatory automated underwriting and credit scoring systems even though their systems have a disparate impact on minorities because of their status as minorities. Defendants cannot and do not have any legitimate business purpose for creating, using, and perpetuating the use of such discriminatory automated underwriting and credit scoring systems. Instead, Defendants reject minority home buyers outright or charge them more than non-minority home buyers, thereby perpetuating discrimination in lending markets.

15. Under the guise of increasing profits and reducing the expense and time associated with underwriting loans, Defendants conceived of and implemented the use of automated underwriting systems and statistical credit scoring models to classify mortgage applicants.

16. Defendants' automated underwriting and credit scoring systems are inherently discriminatory in that they contain racially discriminatory assumptions that are embedded in the statistical formulas utilized to analyze the credit score and other credit information to reach an underwriting decision. Because of these racially discriminatory assumptions, Defendants' automated underwriting and credit scoring systems have a disparate impact on minority mortgage applicants. Minority home buyers have experienced a disparate impact by virtue of either being denied loans outright, where similarly situated Caucasian applicants are not being denied loans, or by being charged higher interest, higher fees, or being required to put more money down than similarly situated Caucasians.

17. The discriminatory criteria that are a part of Defendants' automated underwriting and credit scoring systems are not necessitated by considerations of risk, profit, or any other legitimate race-neutral business consideration. Alternative methods are available which would accomplish the business objectives forming the ostensible rationale for Defendants' use of such discriminatory criteria without imposing the substantial and disproportionate burden on minority home loan applicants that its criteria have and currently impose.

## **ROBERTO ZAMUDIO**

18. Roberto Zamudio is a 55-year old Mexican-American man who is employed as a teacher at the Nolan Richardson Middle School, 11350 Loma Franklin, El Paso, TX 79934.

19. On August 2, 2005, Mr. Zamudio attempted to refinance his residence at HSBC's "Beneficial" office located at 2240 E. Loham Avenue, Las Cruces, NM 88001. During the process of applying for this residential mortgage loan, a Beneficial Loan officer told Mr. Zamudio that he would qualify for a loan if his residence was appraised at more than $140,000.00. Mr. Zamudio's residence was subsequently appraised at $144,900.00.

20. Nevertheless, on September 15, 2005, Mr. Zamudio was notified that his residential loan application was denied by Defendants. A true and correct copy of this denial letter is attached hereto as Exhibit A. In addition, prior to receiving this denial letter, Mr. Zamudio also received a letter from Defendants disclosing his credit score and the specific Credit Reporting Agency providing the credit score. A true and correct copy of this letter is attached hereto as Exhibit B.

21. Mr. Zamudio telephoned HSBC's Beneficial office to determine why his application was disapproved and was told that the value of his residence was insufficient to qualify for a loan.

22. However, this stated reason was not the actual reason Defendants denied Mr. Zamudio's loan application. In actuality, Defendants denied his loan on the basis of their discriminatory policies and procedures regarding the use of credit scores and credit information.

## **CLASS ACTION ALLEGATIONS**

23. This action is brought by Plaintiff as a class action pursuant to Rule 23(a) and Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all minorities who applied for residential mortgage loan contracts with HSBC and who were either rejected outright or were given less favorable loan terms and conditions than similarly situated Caucasian applicants as a result of Defendants' discriminatory conduct.

24. The Class is believed to comprise of many thousands of mortgage applicants in the United States, the joinder of whom is impracticable, and for whose claims class treatment will provide substantial benefit to both the parties and the court system. A well-defined commonality of interest in the questions of law and fact involved affects Plaintiff and proposed Class Members. Common questions of law and fact predominate over any questions that may affect Class Members individually. The common questions include:

   a. Whether Defendants discriminated against Class Members by denying their loan applications or by charging them higher interest, fees, and other costs for home mortgage loans than Defendants charge similarly situated non-minority borrowers;

   b. Whether Defendants can articulate a legitimate non-discriminatory reason for their practices and procedures which are discriminatory;

   c. Whether Defendants have any business justification for these practices and procedures which cause a disparate impact upon minorities;

   d. Whether there is a less discriminatory alternative to these practices and procedures;

   e. Whether Plaintiff and Class Members are entitled to specific performance, injunctive relief and/or other equitable relief against Defendants;

    f. Whether Plaintiff and Class Members have sustained damages and the proper measure of those damages.

  25. Plaintiff's claims are typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests antagonistic to those of the Class. Plaintiff has retained competent and experienced counsel in the prosecution of this type of litigation.

  26. Defendants have acted and refused to act on grounds generally applicable to the Class by engaging in the same discriminatory conduct with respect to all Class Members, thereby making injunctive or declaratory relief applicable with respect to the Class as a whole. Class Members primarily seek injunctive relief.

  27. A class action also is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiff's and Class Members' claims is manageable, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

  28. Most individual Class Members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation and the significant costs attendant to litigation on this scale compared to the significant, but small damages suffered by individual Class Members.

  29. Unless a class is certified, Defendants will continue to engage in predatory and discriminatory lending practices to the detriment of minority borrowers. Unless a class-wide injunction is issued, Defendants will continue to commit violations against minority home mortgage loan applicants.

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT
## 42 U.S.C. § 3601 – § 3619

30. Plaintiff repeats and realleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

31. Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA. 42 U.S.C. § 3605(b).

32. Through denying Plaintiff and Class Members residential mortgage loans and by imposing higher interest, and greater fees and costs on residential mortgage loans for minorities than on loans to Caucasians, Defendants have discriminated against Plaintiff's and Class Members' ability to participate in real estate-related transactions and in the terms and conditions of such transactions in violation of the FHA. 42 U.S.C. § 3605(a).

33. As a proximate result of Defendants' violation of 42 U.S.C. § 3605, Plaintiff and Class Members have been injured and are entitled to injunctive and declaratory relief and damages or make whole equitable relief. In addition, Defendants' conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendants acted with malice and reckless indifference to the federally protected rights of Plaintiff and Class Members. As a result, Plaintiff and Class members are entitled to punitive damages.

34. Moreover, Defendants continue to discriminate in violation of the FHA against Class Members every time Defendants deny or provide a residential mortgage loan as described herein. If not enjoined from such violation by the Court, Defendants will continue to engage in conduct that disregards the rights of Plaintiff and Class Members and cause Plaintiff and Class Members irreparable injury for which there is no adequate remedy at law. 42 U.S.C. § 3613(c).

9

35. Plaintiff and Class Members ask this Court to declare the rights of the parties herein regarding Defendants' obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

**COUNT II
VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
15 U.S.C. § 1691 - § 1691f**

36. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

37. Defendants engage in credit transactions through their involvement in offering, granting, and purchasing of residential mortgage loans. Defendants are "creditors" under ECOA 15 U.S.C. § 1691(a).

38. Through imposing higher interest and greater fees and costs on residential mortgage loans to Plaintiff and Class Members, Defendants have discriminated against Plaintiff and Class Members with respect to a credit transaction on the basis of race in violation of the ECOA. 15 U.S.C. § 1691(a).

39. Defendants' methods of using credit information and credit attributes in underwriting mortgage loans is discriminatory in effect because it has a disproportionately negative impact on a prohibited basis, even though the practice appears neutral on its face.

40. As a proximate result of Defendants' violation of 15 U.S.C. § 1691, Plaintiff and Class Members have been injured and are entitled to injunctive and declaratory relief and damages or make whole equitable relief. In addition, Defendants' conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous or otherwise aggravated beyond mere negligence. Defendants acted with malice and reckless indifference to the federally protected rights of Plaintiff and Class Members. As a result, Plaintiff and Class Members are entitled to punitive damages.

41. Moreover, Defendants continue to discriminate in violation of the ECOA against Class Members every time Defendants deny or provide a residential mortgage loan as described herein. If not enjoined from such violation by the Court, Defendants will continue to engage in conduct that disregards the rights of Plaintiff and Class Members and cause Plaintiff and Class Members irreparable injury for which there is no adequate remedy at law. 15 U.S.C. § 1691(e).

42. Plaintiff and Class Members ask this Court to declare the rights of the parties herein regarding Defendants' obligations to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

## JURY DEMAND

43. Plaintiff, on behalf of himself and all others similarly situated, hereby demands trial by jury.

## REQUESTS FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff requests the following relief:

(1) An order determining that the action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(2) A Judgment awarding Plaintiff and Class Members costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

(3) A Judgment granting extraordinary equitable and/or injunctive relief as permitted by law or equity, including rescission, restitution, reformation, attaching, impounding or imposing a constructive trust upon, or otherwise restricting, the proceeds of Defendants' ill-gotten funds to ensure that Plaintiff and Class Members have an effective remedy;

(4) A Judgment awarding punitive damages to Plaintiff and Class Members;

(5) A Judgment granting declaratory and injunctive relief and all relief that flows from such injunctive and declaratory relief; and

(6) A Judgment or other Order granting such other and further relief as the Court deems just and proper including, but not limited to, recessionary relief and reformation.

DATED: October 25, 2007.

By: */s/ Marvin A. Miller*
Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
115 S. LaSalle St.
Suite 2910
Chicago, Illinois 60603
Phone (312) 332-3400
Facsimile (312) 676-2676

*Designated Local Counsel*

J. Andrew Meyer
Christa C. Collins
Nicole C. Mayer
**JAMES, HOYER, NEWCOMER & SMILJANICH, P.A.**
4830 West Kennedy Boulevard, Suite 550
Tampa, FL 33609-2589
(813) 286-4100 – phone
(813) 286-4174 – fax

*Attorneys for Plaintiff and the Class*

12

# EXHIBIT A

2240 EAST LOHMAN AVE
LAS CRUCES   NM 88001

09/15/05

Office Number 671707
9160005444

ROBERTO ZAMUDIO
621 E PALOMA BLANCA DR
CHAPARRAL NM 88021

Dear Applicant:

Thank you for applying to us for a first mortgage loan.

After carefully reviewing your loan application, we are sorry to advise you that we cannot approve your application at this time. If you would like a statement of specific reasons why your application was denied, please contact our customer service department at the address shown below within 60 days of the date of this letter. We will provide you with the statement of reasons within 30 days after receiving your request.

BENEFICIAL
2240 EAST LOHMAN AVE
LAS CRUCES   NM 88001
(505) 541-4380

If we obtained information from a consumer reporting agency as part of our consideration of your application, its name, address, and telephone number is shown below. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you received is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. You can find out about the information contained in your file (if one was used) by contacting:

EQUIFAX INFO SERVICE LLC
PO BOX 740241
ATLANTA GA 30374
(800) 685-1111

Notice: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Washington, D.C. 20580.

# EXHIBIT B

10/27/2005  13:16    9158228812              NOLAN RICHARDSON MID              PAGE  02

BENEFICIAL
2240 EAST LOHMAN AVE
LAS CRUCES, NM 88001


ROBERTO ZAMUDIO                                                          08/03/2005
621 PALOMA BLANCA DR
CHAPARRAL, NM 88081-7824

Il‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍‍

## NOTICE TO HOME LOAN APPLICANT

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency/credit bureau distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer-generated summary calculated at the time of the request and based on information that a consumer reporting agency/credit bureau or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency/credit bureau at:

EQUIFAX INFO SERVICE LLC
PO BOX 740241
ATLANTA, GA 30374

The consumer reporting agency/credit bureau plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have any questions concerning the terms of the loan, contact the lender at (505) 541-4380.

Summary of Credit Scoring Information for: ROBERTO ZAMUDIO
Credit Score*: 633  Date score was created: 08/02/2005
Range of possible scores*: 300 - 850
Key Factors adversely affecting score:

54   Number of seriously adverse trade lines
17   Number of months since most recent late payment
II   No. of accts currently or in the past not paid as agreed
F    Prop. of bal. to high cr. on bk rvlvng or all rvlvng accts
Y    Inquiries impacted the score but not significantly

* This credit score information was provided to the Lender by the consumer reporting agency/credit bureau.

08/03/2005                                                               0131LE02



*Z95D87E68O - 98 - US1 - 9 - 000 - 0131LE - Z - 1 - O ** *ORIGINAL

## **CERTIFICATE OF SERVICE**

      I, Marvin A. Miller, an attorney, hereby certifies that on October 25, 2007, service of ***First Amended Complaint*** was accomplished pursuant to ECF as to Filing Users and I will comply with LR 5.5 as to Non-ECF Users.


                                        */s/ Marvin A. Miller*
                                        Marvin A. Miller